In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00029-CV


______________________________






THE STATE OF TEXAS FOR THE BEST INTEREST


AND PROTECTION OF C.R.W.





 


On Appeal from the County Court at Law


 Fannin County, Texas


Trial Court No. 2634




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N


 C.R.W. appeals from the trial court's order authorizing the administration of psychoactive
medication entered in connection with the trial court's order authorizing extended mental health
services. A trial court may issue an order authorizing the administration of one or more classes of
psychoactive medications to a patient who is under a court order to receive inpatient mental health
services. Tex. Health & Safety Code Ann. § 574.106(a) (Vernon Supp. 2007). The court may
issue an order if it finds, by clear and convincing evidence that (1) the patient lacks the capacity to
make a decision regarding the administration of the proposed medication and (2) treatment with the
proposed  medication  is  in  the  best  interest  of  the  patient.  Tex.  Health  &  Safety  Code
Ann. § 574.106(a-1) (Vernon Supp. 2007).

 Because in State for the Best Interest and Protection of C.R.W., cause number 06-08-00028-CV, we held the evidence legally insufficient to support the trial court's order authorizing temporary
mental health services, we must, likewise, reverse the order authorizing administration of
psychoactive medication. We, therefore, reverse and render judgment denying the State's application
for authority to administer psychoactive medication to C.R.W. 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 24, 2008

Date Decided: April 25, 2008



 Priority="9" QFormat="true" Name="heading 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00015-CR

                                                ______________________________

 

 

                                     THE STATE OF
TEXAS, Appellant

 

                                                                V.

 

                                    JOHN HARDY TAYLOR, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 336th
Judicial District Court

                                                             Fannin County, Texas

                                                            Trial
Court No. 23053

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

I.          BACKGROUND

 

            In its
indictment, the State alleged that, on or about August 13, 2008, John Hardy
Taylor was the owner of a dog he knew to be dangerous.  It is further alleged that on the date in
question, Taylors dangerous dog, while not restrained in a secure enclosure,
made an unprovoked attack on Haiden Lynn McCurry, causing serious bodily injurya
violation of Section 822.005(a)(2) of the Texas Health and Safety Code.[1]  The trial court dismissed the indictment
against Taylor with prejudice on the ground that Section 822.005(a)(2) is unconstitutional,
facially and as applied, because it failed to set forth any required culpable
mental state.  Tex. Health & Safety Code Ann. § 822.005(a)(2) (Vernon
2010).  The State appeals from the order
quashing the indictment in trial court cause number 23053.  We find the statute to be constitutional and
reverse the judgment finding the statute unconstitutional.  We do affirm that part of the judgment
quashing the indictment because it fails to allege a culpable mental state,[2]
but modify it as dismissed without prejudice. 

 

 

 

II.        STANDARD OF REVIEW

 

            Because the
sufficiency of an indictment is a question of law, a trial courts decision to
quash an indictment is reviewed de novo. 
State v. Moff, 154 S.W.3d 599,
600 (Tex. Crim. App. 2004).  In reviewing
the constitutionality of a statute, the court must presume the statute is valid
and the Legislature has not acted unreasonably or arbitrarily.  Rodriguez
v. State, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).   In the absence of contrary evidence, we must
presume that the Legislature acted in a constitutionally sound fashion.  The burden rests upon the individual who
challenges a statute to establish its unconstitutionality.  Id.  Thus, this appeal presents an unusual
situation where, even though Taylor was successful in having the indictment
quashed, the law nevertheless imposes a presumption that the statute is
valid.  In this regard, the Texas Court
of Criminal Appeals has determined that: 

A statute is void for vagueness if it fails to define the
criminal conduct with sufficient definiteness that ordinary people can
understand what conduct is prohibited and in a manner that does not permit
arbitrary and discriminatory enforcement. 
If, as in this case, a statute does not substantially implicate
constitutionally protected conduct or speech, it is valid unless it is
impermissibly vague in all applications or as applied to the defendant.

 

Lawrence v. State,
240 S.W.3d 912, 915 (Tex. Crim. App. 2007). 
The statute must be upheld if a reasonable construction can be
ascertained that will render the statute constitutional and carry out the
legislative intent.  Shaffer v. State, 184
S.W.3d 353, 363 (Tex. App.Fort Worth 2006, pet. refd).

 

 

III.       ANALYSIS

 

            This is an appeal by the State
from the trial courts order quashing the indictment against Taylor with
prejudice.  At the trial court level,
Taylor maintained that Section 822.005(a)(2) of the Texas Health and Safety
Code was unconstitutional because it does not include a culpable mental
state.  On appeal, Taylor does not
advance this argument; rather, he contends that this section of the statute is
unconstitutionally vague because it fails to impose a duty to act.  Because the trial courts order quashing the
indictment with prejudice is based upon the determination that Section
822.005(a)(2) is unconstitutional because it does not set forth a culpable
mental state, and is therefore unconstitutionally vague, we address both
attacks upon the constitutionality of the statute.[3]  The State maintains that Section 822.005(a)(2)
is not unconstitutional because it imposes a mental state of knowingly on each
element of the offense.

            A.        Challenge
to the Constitutionality of the Statute

 

                        1.  The Statute Requires a Culpable Mental State

 

            Section
822.005(a)(2) provides that a person commits an offense if the person is the
owner of a dog and the person:

            (2)
knows the dog is a dangerous dog by learning in a manner described by Section
822.042(g) that the person is the owner of a dangerous dog, and the dangerous
dog makes an unprovoked attack on another person that occurs at a location
other than a secure enclosure in which the dog is restrained in accordance with
Subchapter D and that causes serious bodily injury, as defined by Section
822.001 . . . .

 

Tex. Health &
Safety Code Ann. § 822.005(a)(2). 
Subsection (a)(2) of Section 822.005 requires that the owner of a
dangerous dog know that his or her dog is dangerous.[4]
 While the State contends the relevant
mental state for this section of the statute is that of knowingly, based on
the owners knowledge that his or her dog is dangerous, mere knowledge is not
actionable as a criminal offense.  The
owner of a dangerous dog must also engage in conduct to which a culpable mental
state attaches.[5] The conduct
mandated by this section of the statute is to restrain the dangerous dog in a
secure enclosure in accordance with Subchapter D.  Tex.
Health & Safety Code Ann. § 822.005(a)(2).  Subchapter D, entitled Dangerous Dogs, sets
forth, among other things, a number of requirements with which the owner of a
dangerous dog must comply.  One such
requirement is that the owner of a dangerous dog must restrain the dangerous
dog at all times on a leash in the immediate control of a person or in a secure
enclosure . . . .  Tex. Health & Safety Code Ann. §
822.042(a)(2) (Vernon 2010).  When the
owner of a dangerous dog fails to restrain the dangerous dog and the dog makes
an unprovoked attack on another person that causes serious bodily injury or
death, the owner has committed an offense under the statute.  The relevant inquiry, therefore, is whether a
culpable mental state attaches to this section of the statute.  

            While Section
822.005(a)(2) does not specifically require a culpable mental state, neither
does it specifically dispense with any culpable mental state.  Mere silence as to the culpable mental state
is not sufficient to indicate that the Legislature has plainly dispensed with a
mental element.  Aguirre v. State, 22 S.W.3d 463, 471 (Tex. Crim. App. 1999).  The issue of whether Section 822.005(a)(2) of
the Texas Health and Safety Code requires a culpable mental state is resolved
by the application of Section 6.02 of the Texas Penal Code, which provides, in
pertinent part:

(b)        If
the definition of an offense does not prescribe a culpable mental state, a
culpable mental state is nevertheless required unless the definition plainly
dispenses with any mental element.

 

(c)        If
the definition of an offense does not prescribe a culpable mental state, but
one is nevertheless required under Subsection (b), intent, knowledge, or
recklessness suffices to establish criminal responsibility.

 

Tex. Penal Code Ann.
§ 6.02(b), (c) (Vernon Supp. 2009) (emphasis added).

 

            The
imposition of a culpable mental state upon a statute typically involves crimes
with more severe punishment and involve mala
in se crimes.[6]  See
Haggins v. State, 785 S.W.2d 827 (Tex. Crim. App. 1990) (injury to a
child); McQueen v. State, 781 S.W.2d
600 (Tex. Crim. App. 1989) (unauthorized use of a motor vehicle); McClain v. State, 687 S.W.2d 350 (Tex.
Crim. App. 1985) (theft).  On the other
hand, public welfare offenses involve neglect where the law requires care, or
inaction where it imposes a duty.[7]  Morissette
v. United States, 342 U.S. 246, 256 (1952); Tovar v. State, 978 S.W.2d 584, 587 (Tex. Crim. App. 1998).  Public welfare offenses typically involve
relatively minor punishment, and tend to hold persons strictly liable for their
conduct.  Tovar, 978 S.W.2d at 587.    

            To determine
whether a statute plainly dispenses with a culpable mental state as an element
of a charged offense, certain guidelines should be followed.  Aguirre,
22 S.W.3d at 47077 (culpable mental state required in ordinance which
regulates adult businesses, and that is silent about whether a culpable mental
state is required).  We will examine
those that appear to apply here.

            We
first look to the language of the statute. 
If any section of the statute prescribes a mental state while another
section omits a mental state, such omission indicates or implies that the Legislature
intended to dispense with a mental element in that section.  Id.
at 473.  As previously mentioned, Section
822.005(a)(1) incorporates the mental state of criminal negligence.[8]  The inclusion of a mental state in subpart
(a)(1) of the statute would therefore seem to indicate an intent on the part of
the Legislature to dispense with a mental element in Section
822.005(a)(2).  Tex. Health & Safety Code Ann. § 822.005(a)(2).  

            We
must also examine the nature of the offense to determine whether the statute
dispenses with a culpable mental state. 
In this regard, we are to determine whether the offense is more properly
classified as malum in se, meaning inherently
evil or malum prohibitum, meaning prohibited
evil.[9]  Aguirre,
22 S.W.3d at 473; Tovar, 978 S.W.2d at
591.  Strict liability offenses are
generally malum prohibitum and are
traditionally associated with the protection of the public health, safety, or
welfare.  Aguirre, 22 S.W.3d at 473.  
Examples of such strict liability offenses include prohibitions against
water pollution,[10] driving while
intoxicated,[11] the sale of
horsemeat for human consumption,[12]
and speeding.[13]

            The offense
described in Section 822.005(a)(2) is most aptly described as a malum in se offenseimmoral in its
nature and injurious in its consequences. 
This statute is designed to protect against more than a probability of
danger or a promotion of the social order. 
When a person owns a dog he or she knows to be dangeroushaving been
specifically put on notice of that fact in the manner prescribed by statuteand
fails to restrain his or her dangerous dog, resulting in serious bodily injury
or death of another due to an unprovoked attack by the dog, such act is wrong
in and of itself.  This factor weighs in
favor of interpreting an offense under Section 822.005(a)(2) as requiring a
culpable mental state.  See id. at 47577.  

            We next
examine the severity of the punishment for a violation of this section of the
statute.  Other things being equal, the
greater the possible punishment, the more likely some fault is required.  Thompson
v. State, 44 S.W.3d 171, 180 (Tex. App.Houston [14th Dist.] 2001, no
pet.).  The lighter the punishment, the
more likely the Legislature meant to impose liability without fault.  Aguirre,
22 S.W.3d at 472.  A violation of Section
822.005(a)(2) is punishable as a third degree felony unless the attack causes
death, in which event, the offense is a felony of the second degree.  The punishment for a second degree felony is
imprisonment in the Texas Department of Criminal Justice for any term of not
more than twenty years or less than two years. 
Tex. Penal Code Ann. §
12.33 (Vernon Supp. 2009).  The
punishment for a third degree felony is imprisonment in the Texas Department of
Criminal Justice for any term of not more than ten years or less than two
years.  Tex.
Penal Code Ann. § 12.34 (Vernon Supp. 2009).  We find possible confinement of up to twenty
years for a violation of this statute a strong indicia that a culpable mental
state is required.  See Aguirre, 22 S.W.3d at 47576. 

            The seriousness of
harm to the public which may be expected to follow from the forbidden conduct
is yet another factor to consider in determining whether the Legislature meant
to impose liability without fault or whether it meant to require fault, but
failed to spell it out clearly.  Id. at 476.  Generally, the more serious the consequences
to the public, the more likely the Legislature meant to impose liability
without regard to fault, and vice versa.  Id.
at 471 n.27; Thompson, 44 S.W.3d at
180.  Here, the consequences flowing from
a violation of the statute are serious bodily injury or death to a particular
individual.  These are not the type of serious
consequences to the public typically addressed in strict liability statutes.[14]  Accordingly, and because the statute spells
out the result of the violation, this factor is another indicia that a culpable
mental state is required for a violation of Section 822.005(a)(2) of the Texas
Health and Safety Code.

            In
more recent cases, an important factor in the determination of whether the
statute dispenses with the requirement of a culpable mental state is the
subject of the statute.  Aguirre, 22 S.W.3d at 473.  In this regard, strict liability is generally
associated with the protection of the public health, safety, and welfare.  Id.;
Thompson, 44 S.W.3d at 179.   As noted earlier in this opinion, the courts
of this State have upheld statutes imposing strict liability for a number of
public health and safety offenses, such as driving while intoxicated, speeding,
water pollution, and the sale of horsemeat for human consumption.[15]
 There is no contention here that the
statute in question is in the class of a public safety statute.  Rather, this statute is designed to protect
individuals from being killed or seriously injured by dogs known to be
dangerous by their owners, yet left unrestrained.  This factor weighs in favor of interpreting
an offense under Section 822.005(a)(2) as requiring a culpable mental
state.  

            In certain situations, it is
difficult to prove the mental state of an accused.  The greater the difficulty in proving mental
state, the more likely legislators intended to make the offense one of strict
liability, in order to achieve more effective law enforcement.  Aguirre,
22 S.W.3d at 476. Here, the statute requires knowledge on the part of the owner
that his or her dog is dangerous by learning that the dog is dangerous in a
manner described in Section 822.042(g).  Tex. Health & Safety Code Ann. §
822.005(a)(2).  Section 822.042(g)
provides that:

For purposes of this section, a person learns
that the person is the owner of a dangerous dog when:

 

(1)  the
owner knows of an attack described in 822.041(A) or (B); 

 

(2)  the
owner receives notice that a justice court, county court, or municipal court
has found that the dog is a dangerous dog under Section 822.0423; or

 

(3)  the
owner is informed by the animal control authority that the dog is a dangerous
dog under Section 822.0421.

 

Tex. Health & Safety Code Ann. § 822.042(g).  

 

            Each of the
listed methods of acquiring knowledge of the dogs dangerous propensities is
subject to objective verification in most instances.  Under these circumstances, a prosecutor would
likely encounter little difficulty in proving that the owner of a dangerous dog
who makes an unprovoked attack on another person, at a location other than a
secure enclosure in which the dog is restrained, failed to restrain the
dangerous dog in a reckless, knowing, or intentional manner.  See
Tex. Penal Code Ann. § 6.02
(Vernon Supp. 2009).  Accordingly, this
factor weighs in favor of interpreting an offense under Section 822.005(a)(2)
as requiring a culpable mental state.  

            The fewer
the expected prosecutions for commission of an offense, the more likely the Legislature
meant to require prosecuting officials to delve into the issue of fault.  Aguirre,
22 S.W.3d at 47576, 476 n.51.  Because
we have no means of determining the number of prosecutions expected for this
offense, this is a neutral factor in our analysis.  

            After having
analyzed the relevant attributes of the statute in light of principles
articulated by the Texas Court of Criminal Appeals in Aguirre, we conclude that Section 822.005(a)(2) of the Texas Health
and Safety Code is not a strict liability statute.   The Legislature did not intend to dispense
with the requirement of a culpable mental state in the enforcement of this
provision.  [I]ntent, knowledge, or recklessness
will suffice to establish criminal responsibility under the statute.  See Tex. Penal Code Ann. § 6.02.  We, therefore, conclude that Section
822.005(a)(2) is neither facially unconstitutional, nor is it unconstitutional
as applied to Taylor, because it is subject to a culpable mental state of at
least recklessly.  See Tex. Penal Code Ann. §
6.02(c).

                        2.         The Statute Complies with Sections
6.01(a) and (c) of the Texas Penal                                      Code

 

            Taylor contends that Section
822.005(a)(2) of the Texas Health and Safety Code is unconstitutional because
it violates Section 6.01(a) of the Texas Penal Code[16]
by not requiring a voluntary act or omission and further violates Section
6.01(c)[17]
because it does not set forth a duty to perform an act.  We disagree. 


            First, Section 822.005(a)(2) of the Texas Health and Safety Code imposes
a duty to secure a dangerous dog upon the owner
of the dangerous dog.  Criminal liability
is not unlimited in scope; rather, liability is limited only to individuals who
own dangerous dogs they know to be dangerous. 
The term owner is defined in Section 822.041(5) of the Code as a
person who owns or has custody or control of the dog.  Tex.
Health & Safety Code Ann. §
822.041(5) (Vernon 2010).  The statute
identifies the source of Taylors dutythe fact that he is the owner of a dog
he knows to be dangerous.  See Smith v. State, 603 S.W.2d 846, 847
(Tex. Crim. App. 1980) (indictment charging criminal omission must set forth
facts which give rise to a statutory duty to act).  In this instance, the indictment did not
allege that Taylor knowingly or recklessly failed to restrain the dangerous dog
and therefore appears to be subject to a motion to quash.  An indictment or information must, by direct
and positive averments, allege all of the constituent elements of the offense
sought to be charged.  Holley v. State, 167 S.W.3d 546, 548
(Tex. App.Houston [14th Dist.] 2005, pet. refd) (citing Chance v. State, 563 S.W.2d 812, 814 (Tex. Crim. App. 1978)).  The Texas Penal Code defines element of
offense as:  (A) the forbidden conduct;
(B) the required culpability; (C) any required result; and (D) the negation of
any exception to the offense.  Tex. Penal Code Ann. § 1.07(a)(22)
(Vernon Supp. 2009). 
            But the fact that this
indictment does not allege with particularity the charged conduct does not make
the statute unconstitutional. 

            Second, Section 822.005(a)(2)
provides that when the owner knows the dog is dangerous and the dangerous dog
makes an unprovoked attack, that occurs at a location other than a secure
enclosure . . . in accordance with Subchapter D . . . that owner commits an
offense.  Tex. Health & Safety Code Ann. § 822.005(a)(2). 
Section 822.042, found in Subchapter D of the code, sets forth the
requirements with which the owner of a dangerous dog must comply.  Among other things, the owner of a dangerous
dog is required to restrain the dog at all times on a leash or . . . in a
secure enclosure.  Tex. Health & Safety Code Ann. §
822.042(a)(2).  A secure enclosure is a
fenced area that is locked and marked as containing a dangerous dog.  A secure enclosure must also be capable of
preventing entry by the general public, including children, and of preventing
the dogs escape or release.  Tex. Health & Safety Code Ann. §
822.041(4) (Vernon 2010).  

            Thus, both
the plain language of Sections 822.005(a)(2) and 822.042 impose upon the owner
of a dangerous dog the duty to restrain or secure his or her animal.  These provisions of the Code define criminal
conduct with sufficient definiteness that ordinary people can understand what
conduct is prohibited.  See Lawrence,
240 S.W.3d at 915.  Compliance with these
provisions is subject to objective verification, thus eliminating the concern
of arbitrary or discriminatory enforcement. 
The duty is clearly stated, and the manner of compliance is set forth in
detail.  The failure to perform this duty
is criminalized when the dangerous dog causes serious bodily injury or
death.  Tex.
Health & Safety Code Ann. § 822.005(a)(2).  This section of the statute complies with the
requirements of Sections 6.01(a) and (c) of the Texas Penal Code and is
therefore not unconstitutional.  See Tex.
Penal Code Ann. § 6.01(a), (c). 

            B.        The
Trial Court Did Not Err in Quashing the Indictment

 

            Taylor timely filed a motion to
quash the indictment complaining that the State failed to allege a culpable
mental state.  The trial court, in
granting the motion to quash, found the statute to be unconstitutional for the
failure to set forth any required culpable mental state.  The failure to allege a culpable mental state
when one is required does not render the charging instrument void. Ex parte Weise, 55 S.W.3d 617, 621 (Tex.
Crim. App. 2001).  Because Section 822.005(a)(2)
is constitutional, the trial court erred in treating the charging instrument as
void and in dismissing the indictment with prejudice.  If a culpable mental state is required and
the indictment fails to allege one, then the charging instrument is subject to
a motion to quash.  Id.  The charging instrument
in this case failed to allege a culpable mental state with respect to Taylors
duty to restrain his allegedly dangerous dog in accordance with the
statute.  The trial court therefore
correctly quashed the indictment, but erred in doing so with prejudice.  Accordingly, we modify the order quashing the
indictment to provide that said dismissal is without prejudice.  

 

 

 

 

 

 

 

IV.       CONCLUSION  

 

            We find the judgment declaring
the statute unconstitutional was in error and modify the judgment quashing the
indictment to provide such dismissal is without prejudice.  As modified, the judgment of the trial court
is affirmed.

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          July
6, 2010     

Date Decided:             August
4, 2010

 

Publish                        

 

 

 

 

 

 











[1]Because
this is an appeal of a pretrial order, no testimony or evidence appears in the
record.

 





[2]McCurry
was attacked by two dogs on August 13, 2008, both of which are allegedly owned
by Taylor.  Consequently, Taylor was
indicted for both attacks.  The second
indictment, issued in trial court cause number 23054, is the subject of a
separate appeal, the opinion in which is issued of even date herewith.  We have also issued, of even date herewith,
two additional opinions stemming from two separate indictments issued under
Section 822.005(a)(1) of the Texas Health and Safety Code, involving attacks by
Taylors dogs on Judy Pless, also on August 13, 2008.  Tex.
Health & Safety Code Ann. § 822.005(a)(1) (Vernon 2010).  Those opinions are issued in cause numbers
06-10-00013-CR and 06-10-00014-CR.  





[3]The record before us does not clearly indicate whether
the statute is alleged to be unconstitutional on its face or as applied to
Taylor.  Because the order quashing the
indictment was based upon the statutes unconstitutionality, both facially and
as applied, we will treat this appeal as implicating both bases of
unconstitutionality.

 

 





[4]A
person learns he or she has a dangerous dog in only three ways:  (1) the owner knows of an attack by the dog;
(2) the owner receives notice that a justice court, county court, or municipal
court has found that the dog is a dangerous dog; or (3) the owner is informed
by an animal control authority that the dog is a dangerous dog.  Tex. Health
& Safety Code Ann. § 822.042(g) (Vernon 2010).  

 





[5]See Section 6.02 of the Texas Penal
Code, which provides that a person does not commit an offense unless he
intentionally, knowingly, recklessly, or with criminal negligence engages in
conduct as the definition of the offense requires.  Tex.
Penal Code Ann. § 6.02(a) (Vernon Supp. 2009).

 

 

 





[6]Malum in se is defined as [a] crime or
act that is inherently immoral, such as murder, arson, or rape.  Blacks
Law Dictionary 1045 (9th ed. 2009).

 





[7]Malum prohibitum is defined as [a]n act
that is a crime merely because it is prohibited by statute, although the act
itself is not necessarily immoral. 
Misdemeanors such as jaywalking and running a stoplight are mala prohibita, as are many regulatory
violations.  Id.

 





[8]Subpart
(a)(1) of the statute provides:

 

(1)           with criminal negligence, as defined
by Section 6.03, Penal Code, fails to secure the dog and the dog makes an
unprovoked attack on another person that occurs at a location other than the
owners real property or in or on the owners motor vehicle or boat and that
causes serious bodily injury, as defined by Section 1.07, Penal Code, or death
to the other person. . . .

 

Tex. Health
& Safety Code Ann. § 822.005(a)(1).

 





[9]See also definitions of these terms as
stated in Blacks Law Dictionary,
fn. 6, fn. 7.

 





[10]Am. Plant Food Corp. v. State, 587
S.W.2d 679 (Tex. Crim. App. 1979).





[11]Owen v. State, 525 S.W.2d 164 (Tex.
Crim. App. 1975).

 





[12]Neill v. State, 154 Tex. Crim. 549, 229
S.W.2d 361, 363 (1950).

 





[13]Goodwin v. State, 63 Tex. Crim. 140, 138
S.W. 399, 400 (1911).

 





[14]Strict
liability statutes protect the public from, among other things, the
consequences of drunken driving, the sale of adulterated food, polluted air and
water, and speeding.  See fn. 1013.  

 





[15]See fn. 1013.

 





[16]Section
6.01(a) of the Texas Penal Code provides that a person commits an offense only
if he voluntarily engages in conduct, including an act, an omission, or
possession.  Tex. Penal Code Ann. § 6.01(a) (Vernon 2003).  

 





[17]Section
6.01(c) of the Texas Penal Code provides that a person who fails to perform an
act does not commit an offense unless a law . . . provides that the omission
is an offense or . . . provides that he has a duty to perform the act. Tex. Penal Code Ann. § 6.01(c) (Vernon
2003).